IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1130

Filed 1 July 2026

Randolph County, Nos. 22JA000231-750, 22JA000232-750

IN THE MATTER OF: G.A.D., M.L.D.

Appeal by respondent-mother from order of termination of parental rights entered 11 June 2025 by Judge Darren Allen in Randolph County District Court. Heard in the Court of Appeals 4 June 2026.

*Patricia M. Propheter for respondent-appellant mother.*

*Chrystal S. Kay for petitioner-appellee Randolph County Department of Social Services.*

*A. Grant Simpkins for appellee Guardian ad Litem.*

FREEMAN, Judge.

Respondent-mother appeals from an order terminating her parental rights as to G.A.D. ("Gloria") and M.L.D. ("Melody").[1] On appeal, respondent-mother contends that the trial court erred by failing to comply with the Indian Child Welfare Act (25 U.S.C. §§ 1901–63) ("ICWA"). After careful review, we remand for further proceedings to ensure compliance with ICWA.

## I. Factual and Procedural Background

[1] Pursuant to N.C. R. App. P. 42(b), pseudonyms are used to protect the juveniles' identities.

Respondent-mother and respondent-father are the biological parents of Gloria and Melody. On 13 December 2022, Randolph County Department of Social Services ("DSS") filed juvenile petitions, alleging that Gloria and Melody were neglected and dependent juveniles due to unstable housing and substance abuse. Gloria and Melody were placed in DSS nonsecure custody on 14 December 2022.

On 15 December 2022, the trial court held a hearing to determine the need for the continued non-secure custody of the minor children. Respondent-father, but not respondent-mother, was present at the hearing. In its written order entered 10 January 2023, the trial court found the following:

> The Court has considered the Indian Child Welfare Act . . . as it applies to the minor children in this matter and finds that such is not applicable.
>
> [Respondent-father] identifies his race as white and the race of his minor children as white.
>
> [Respondent-father] states that neither he nor the minor children are members or eligible for membership to a Native American Tribe.

This order contained no inquiry on the record to respondent-mother as she was not present at the hearing. The trial court ordered that the minor children remain in DSS custody and established visitation plans for respondent-parents. It further ordered that "[t]he parents shall inform [DSS] and the Court if they receive any information that either they or the minor children are members or eligible for membership to a Native American tribe."

Five subsequent hearings to determine the need for the continued non-secure custody of the minor children took place on 21 December 2022, 18–19 January 2023, 15 February 2023, 15 March 2023, and 12 April 2023. Respondent-parents were each only present at one of the five hearings: respondent-father was present for the 21 December 2022 hearing and respondent-mother was present for the 18–19 January 2023 hearing via WebEx. In its subsequent written orders, the trial court ordered that the children remain in DSS custody. In each order, the trial court stated that it "ha[d] considered the Indian Child Welfare Act . . . as it applie[d] to the minor children" and found it was not applicable. In each order, the court ordered that "[t]he parents shall inform [DSS] and the Court if they receive any information that either they or the minor children are members or eligible for membership to a Native American tribe."

On 18 May 2023, the trial court held an adjudication and disposition hearing, and the children were adjudicated neglected and dependent. Respondent-mother was present via WebEx. In its 9 June 2023 written order, the trial court made no findings regarding ICWA.

The trial court held permanency planning hearings on 25 October 2023, 20 March 2024, 12 June 2024, and 19 December 2024. Respondent-father was present for none of the hearings and respondent-mother was present via WebEx at only the 12 June 2024 hearing. In its subsequent written orders, the trial court made no findings regarding ICWA. At each permanency planning hearing, the minor children

continued to be placed in DSS's custody. In the initial hearings, the primary plan was reunification and respondent-mother continued to be ordered to complete certain activities to reunify with the minor children. During the last of these hearings, the trial court found that respondent-mother had not made reasonable progress on her tasks as required for reunification; thus, the court changed the minor children's primary plan from reunification to adoption.

On 10 February 2025, DSS moved the trial court to terminate parental rights of respondent-parents as to Melody and Gloria. On 11 June 2025, the trial court held a termination of parental rights hearing. Respondent-mother was not present for this hearing. In its subsequent 17 July 2025 order, the trial court concluded that grounds existed to terminate the parental rights of respondent-mother and respondent-father under N.C.G.S. § 7B-1111(a)(1)–(3), (7) (2025). Further, the trial court determined that it was in the best interest of the minor children to terminate parental rights. No factual findings were made regarding ICWA. The trial court ordered that the parental rights of respondent-mother and respondent-father be terminated with respect to both minor children. On 15 August 2025, respondent-mother timely appealed the order.

## II.    Jurisdiction

This Court has jurisdiction to review any order that terminates parental rights. N.C.G.S. § 7B-1001(a)(7) (2025).

## III.    Standard of Review

- 4 -

We review whether a trial court complied with ICWA requirements de novo. *In re L.Q.*, 298 N.C. App. 540, 546 (2025). "Under de novo review, this Court considers the matter anew and freely substitutes its own judgement for that of the trial court." *Id.* (cleaned up).

## IV. Discussion

Respondent-mother argues that the trial court did not comply with ICWA because it did not "inquire of [respondent-mother] . . . as to the possibility that Melody and Gloria might indeed be Indian children."

ICWA establishes "the minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes in order to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." *In re A.P.*, 260 N.C. App. 540, 542–43 (2018) (quoting 25 U.S.C. § 1902 (2012)).

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention.

25 U.S.C. § 1912(a) (2025).

Under ICWA, an Indian child is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian

tribe." 25 U.S.C. § 1903(4) (2025). Federal regulations define child-custody proceeding as follows:

> Child-custody proceeding. (1) "Child-custody proceeding" means and includes any action, other than an emergency proceeding, that may culminate in one of the following outcomes:
>
> (i) Foster-care placement, which is any action removing an Indian child from his or her parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;
>
> (ii) Termination of parental rights, which is any action resulting in the termination of the parent-child relationship;
>
> (iii) Preadoptive placement, which is the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; or
>
> (iv) Adoptive placement, which is the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.
>
> (2) An action that may culminate in one of these four outcomes is considered a separate child-custody proceeding from an action that may culminate in a different one of these four outcomes. There may be several child-custody proceedings involving any given Indian child. Within each child-custody proceeding, there may be several hearings. If a child is placed in foster care or another out-of-home placement as a result of a status offense, that status offense proceeding is a child-custody proceeding.

25 C.F.R. § 23.2 (2026).

Federal regulations state that our courts "must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record." 25 C.F.R. § 23.107(a) (2026); *In re M.L.B.*, 377 N.C. 335, 340 (2021). Upon conducting this required inquiry:

> A court . . . has reason to know that a child involved in an emergency or child-custody proceeding is an Indian child if:
>
> (1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child;
>
> (2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
>
> (3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;
>
> (4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;
>
> (5) The court is informed that the child is or has been a ward of a Tribal court; or
>
> (6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.

25 C.F.R. § 23.107(c) (2026).

> The inquiry into whether a child is an Indian child under ICWA is focused on only two circumstances: (1) Whether the child is a citizen of a Tribe; or (2) whether the child's parent is a citizen of the Tribe and the child is also eligible for citizenship. The inquiry is not based on the race of the child, but rather indications that the child and her parents may have a political affiliation with a Tribe as defined in 25 U.S.C. § 1903.

*In re M.L.B.*, 377 N.C. at 340 (cleaned up).

In *In re C.C.G.*, our Supreme Court held no reversible error when the trial court, in at least one hearing, inquired of all parties and none of the parties knew or had reason to know the child is an Indian child as defined by ICWA. 380 N.C. 23, 31 (2022). There, "the trial court's adjudication and disposition order . . . and order transferring custody to DSS . . . both specifically state '[t]he [c]ourt *inquired of the parties* and none of the parties know or have reason to know the child is an Indian child. . . .' " *Id.* (emphasis added). Thus, the Court determined that "the record before [it] reflect[ed] that the trial court made the inquiry required by 25 C.F.R. § 23.107(a). . . ." *Id.*

However, when "the determination of whether there is reason to know that [a minor child] is an Indian child cannot be made on the record before us, we remand to the trial court." *In re A.L.*, 378 N.C. 396, 404 (2021). For example, in *In re A.L.*, our Supreme Court determined there was noncompliance with ICWA because "nothing in the record reflect[ed] the trial court making this inquiry or the participants' responses." *Id.* at 403. There, the Court remanded and instructed the trial court on

remand:

> [A]sk each participant . . . whether the participant knows or has reason to know that [the child] is an Indian child" on the record *and receive the participants' response on the record. See* 25 C.F.R. § 23.107(a). If there is reason to know that [the minor child] is an Indian child, the trial court must comply with 25 C.F.R. § 23.107(b) and conduct a new hearing on termination of respondent's parental rights. . . . If there is not a reason to know that [the child] is an Indian child, . . . then the trial court should enter an order to this effect and the termination of respondent's parental rights order . . . remains undisturbed.

*Id.* at 404 (emphasis added).

Here, in multiple orders, the trial court "considered the Indian Child Welfare Act . . . as it applie[d] to the minor children . . . and [found] that such is not applicable." Further, in its 10 January 2023 order, the trial court found that respondent-father identified the race of himself and the minor children as white and that neither he nor the minor children are members or eligible for membership to a Native American Tribe. However, unlike *In re C.C.G.*, the record does not reflect that the trial court made this inquiry as to respondent-mother as required under 25 C.F.R. § 23.107(a). The record contains no information from respondent-mother identifying her race, her minor children's race, or her minor children's membership to a Native American Tribe. Thus, we cannot determine from the record on appeal whether there was reason to know that an Indian child may be involved. *In re A.L.*, 378 N.C. at 404; *see also In re M.L.B.*, 377 N.C. at 341 (reasoning that because "the trial court did not comply with 25 C.F.R. § 23.107(a), the trial court could not comply with 25 C.F.R.

§ 23.107(c) and could not determine whether it had reason to know [the child was] an Indian child."). *But cf. In re C.C.G.*, 380 N.C. at 31 (holding no reversible error when the record reflected that the trial court, in at least one hearing, specifically inquired of all parties and none of the parties knew or had reason to know the child is an Indian child as defined by ICWA).

Accordingly, we remand to the trial court to ask respondent-mother on the record whether she knows or has reason to know whether either Gloria or Melody have membership or eligibility for membership in a federally recognized Indian tribe. *In re A.L.*, 378 N.C. at 404. If after this inquiry, respondent-mother does not produce evidence of Indian tribal membership as defined by 25 U.S.C. § 1903(4), then the trial court should enter an order to this effect and leave the termination of parental rights order undisturbed. *Id.*

## V.   Conclusion

Because the record does not reflect that the trial court made an ICWA inquiry as to respondent-mother, we remand to the trial court for compliance with ICWA.

REMANDED.

Judges GORE and MURRY concur.